Good morning, Your Honors. May it please the Court, my name is Bob Christie. I'm here on behalf of Mark Kent, who's with us here in court with his wife, Kim. I'd like to reserve three minutes for rebuttal, if I may. On the record that's presently before you, Insitu has acknowledged that there are issues of fact that would prove that Mark Kent was fraudulently induced through misrepresentations, false statements, and... I don't know that they... What they're suggesting is, based on the standard of review we have, they have to suggest that you've at least got a chance to argue it. That's exactly right, Your Honor. If you look... Even though that's what you can do, given the general standard of review on summary judgment, that you signed a document that said, we don't have those fact situations in place, because we've signed a document saying we didn't rely, period. That is correct. The exact issue before this Court, which is purely an issue of Washington's subset of law, is whether or not a no-reliance provision in an agreement completely invalidates, and otherwise, in other words, serves as a complete legal defense to invalidating an agreement where there's fraud and misrepresentation acknowledged to exist, or at least potentially exist for purposes of de novo review on summary judgment. So... What Washington case would suggest that it doesn't? There are two Washington cases that... Yeah. I know there are three of them that deal with the issue. Okay. Yes. But what Washington case would suggest that if you say you haven't relied, that you can nevertheless show reasonable reliance when the person signing onto the agreement is a sophisticated businessman, is represented by counsel, has gobs of time to reflect on it, is in, at that point, an adversarial relationship, because he's been fired, and has time to renege even after signing the agreement. So you add up all of those circumstances. In what case is there in Washington that would suggest that that clause isn't enforceable? There are two Washington cases, both out of Division I. One of the cases is one that was cited by Judge Shea in his decision, the Hellenius case. The case that Hellenius cites... Well, there wasn't a reliance agreement there. So that one doesn't help. Your Honor, in both of those cases, both in Hellenius and in Stewart, there were no reliance provisions in those documents. Hellenius was decided by Division I in 2005. It followed by one year, the decision in Stewart. But it suggested if there were, the result there would have been different. That was the Hellenius case, but in Stewart, there was a no reliance provision. And let me talk about Stewart, because I think it's the critical case, because it's the starting point for all of the analysis, both under the Hellenius decision, and also as counsel recently called to this Court's attention, just here in May, this Court, in a memorandum decision in the Atchley case, cited to the Stewart case. So I'd like to spend a little bit of time talking about Stewart v. Estate of Steiner, 122 Washington Appellate 258, 93 Pacific 2nd, 919. Don't cite us our memorandum dispos. We don't get too excited about that. And I'm not too excited about it either, Your Honor, only that if there's been any pronouncement by this panel on anything, it's on this issue when it's cited to Stewart. Stewart is the case that is the basis for Hellenius, and Hellenius was one of the keys to Judge Shea's decision. Well, the case that I can't pronounce that begins with a K, which is far more close. Shea Witokowski. Thank you. It's far more closely on point. But going back to Stewart, I am puzzled by your statement that there was no reliance clause. There was a no reliance clause in that case, in Stewart. There was a no reliance clause in that. There was a no reliance clause. Correct. I think we're saying the same thing. Yeah, sure. Thanks. Okay. What is really important about Stewart, if you look at it, Stewart did something very interesting. It looked to federal securities cases for guidance on this issue. Because it was a securities case. This isn't. Absolutely. This is not a securities case. And, frankly, the more recent decision in Ashley by this Court was not a securities case. So I grant that it is a case under Washington's securities law. It cites to two cases. One, a First Circuit case named Jack Voney. And, secondly, a Seventh Circuit case named Rissman, R-I-S-S-M-A-N. And what I thought, as a former law clerk, was interesting about the citation to Rissman is the Court cites specifically. Why does a former law clerk make any difference? You know, intellectual curiosity, I guess, Your Honor. But they cite to the concurrence opinion. I have my law clerks be able to have an advantage coming to talk to me. So that's why I ask you that. It's a little bit throw-in. I'll take that. They cite and adopt the concurrence in Rissman. And here's that language. This is from the Stewart decision, talking and then citing to the Rissman concurrence. Thus, the fact that one signs a nonreliance provision in a subscription agreement, this was a subscription agreement case, is not necessarily dispositive. Rather, it is appropriate to consider other relevant factors in making a determination whether one reasonably relies on representations or omissions in connection with the sale of a subscription. I know what it said. I've read it carefully. Maybe I wasn't clear in my question, because when I asked you the question, I said when there is a reasonable or when there is a no-reliance clause in an agreement that has been executed by a sophisticated businessman who was represented by counsel, who was in an adversarial relationship with the other side because he had been fired, and who had gobs of time to think about whether that's what he wanted to sign on to and then had seven days to back off it after he had signed it. That was my question. So it included all of those circumstances. I didn't say just because there was a reliance agreement. Well, what I'm looking at is the limited body of Washington case law on the issue. We know we have two cases out of Division I that don't have that unique fact pattern. We know we have one case out of Division II that has the facts that you're reciting or closer to those facts. And, of course, that's why in situ spends all of their time and all of their argument focused solely on the Kiewitkowski decision. So let me direct you to what language is central to the Kiewitkowski holding, because I think it's quite telling. If you look at that decision, there is language in that that belies the notion that under all circumstances. I didn't say all circumstances. Do you want to just punt on my question or do you want to say, you know, it's immaterial? I mean, what is the answer to my question? The answer to your question is found in Kiewitkowski. Okay. Kiewitkowski says, and the critical piece of that that's cited by the decision is found at Pacific Third 519. And the court does say in that case that to establish intentional, negligent, or innocent misrepresentation, fraud, or estoppel, Kiewitkowski must show that he reasonably or justifiably relied on the bank's representations. It goes on to say he specifically agreed in paragraph five that he did not rely on the representations. But then the court makes this statement, Your Honor, and I think this is very telling because they didn't just make it gratuitously. They make this statement. Quote, further, as discussed above, any such reliance would have been unreasonable. Period. And my point is you don't make that statement. That would be useless language if the analysis ends with the finding of a no reliance provision. There's no reason. My question, my question, I'm not going to repeat it again, but my question does not presume that the only thing that matters is the reliance clause. It presumes that a whole bunch of circumstances matter. Well, a bunch of circumstances matter, then that has to be decided by the fact finder. What the argument is here. There's no dispute about any of the circumstances that I mentioned. There is no dispute of fact about it. There is no dispute of fact that both parties were represented by counsel on all the elements of your. There also is no dispute that at least on this record there is evidence of fraud, withholding information, intentionally concealing that. There has to be reasonable reliance on those representations, and that brings us right back to the core question that we've been talking about. So the question then would be on this record, should this court rule as a matter of law that there cannot be reasonably reliance on all of the situations presented in this record, irrespective of the existence of a non-reliance provision? And I suggest that the record would not support that finding as a matter of law. The real central question, the way it's framed, is there anything to talk about beyond the existence of a non-reliance provision? Does that end the analysis? And that is what Judge Shea found. And they're saying, in situ is saying, that is the law in Washington. And I'm telling you that that is not the law in Washington, because we have a split between Division I in two very well-reasoned decisions, one of which cites to this Rissman concurrence that finds that the existence of a no-reliance provision is a factor. It may be a very strong factor in the ultimate outcome, but it is not dispositive. So we have that line of decisions, and then we have this one decision in Kiewitkowski. That's why we suggest to the court, this is a classic situation, when our Supreme Court would accept review and make a decision on substantive Washington law to resolve a dispute between the divisions. And we've suggested that this court may well want to do that. You did not suggest that to the district court, right? That is correct, Your Honor. We did not. And I understand exactly what the case law is in terms of whether or not this court now makes that decision. It's not form shopping. If this court decides to resolve or guess how our Supreme Court would resolve the difference between the divisions, you're completely entitled to do that. And I would say that if you do undertake to do that, then you focus on what is the more well-reasoned line of cases, two of them, out of Division I, which adopts this series of factors. It's the eight-factor test that was originally articulated in Jack Phoney, and as you know because you've read these carefully, in the Hellenius decision is now called the Stuart factors. So these eight Stuart factors, which looks at some of the things that you're talking about, Your Honor, the sophistication of the plaintiff, the nature and the length of the relationship, the nature of the information that was hidden. I'm willing to look at all those, and I still ask the same question. And the same question is that on this record, we are entitled to have a jury evaluate all of those circumstances and determine whether or not Mr. Kent is entitled to set aside this agreement in the face of a no-reliance provision. That is precisely what we are asking this Court to do, is to reverse this, send it back for trial, and allow us to proceed with a full and evidentiary hearing with the jury instructed, quite frankly, straight out of the Stuart case with these eight Stuart factors. We never got to that point, obviously. All we got was a statement that the existence of a no-reliance provision is definitive, resolves the issue. Even Kiewitkowski does not so hold. And I now see I'm into my rebuttal time, and I'd like to reserve the balance. All right. Thank you. Good morning. I'm Dan Tamey from Whitler Mendelson, and I'm representing in situ. I apologize in advance for my voice. I'm fighting a bit of a cold. I'm almost reluctant to say anything, because Judge Reimer has essentially made our argument, which is that on the uncontested facts. Well, your opposing counsel, part of his argument is that the factors by their very nature are fact intensive and that you can't look at them and make a call as a matter of law on them. So why don't you agree with that? Let me respond directly to that. First, one thing about the Stewart case is a point that your Honor made, which is that it is a securities fraud case. It's not a common law fraud case. There's every reason to believe, given the statutory requirement of broad construction of the securities fraud statutes, that the factors for overcoming a no-reliance clause in the context of conveyance of securities would be a tougher standard for the party trying to rely on the no-reliance clause than in a non-statutory context such as we have here. In fact, that's a point that Judge Kunauer made in his decision in the FMC case, that in looking at those securities fraud cases dealing with no-reliance clauses, that you need to take care as to how much weight you give those in the context of a common law fraud case. But if we're back in a common law case and we look at the normal provisions of contracting, it seems to me that you're really making some kind of a parole evidence rule argument, aren't you? I'm not at all making a parole evidence rule argument. And if I could take a moment. Well, if we're in common law, I mean, the bottom line is we're trying to decide what Washington has done with their case and with these other cases in other divisions. And I guess I'm really trying to go back to if you're really talking common law, aren't we talking a parole evidence argument? No, we're not, Your Honor. What are we talking? What we're talking about is the elements of common law fraud, which include an obligation of the plaintiff to prove reasonable or justifiable reliance, and the effect on that if the plaintiff has agreed and represented in the contract that he is not reliant. Under the parole evidence rule, if I were to use that, one of the ways that one would not suggest that this explicit language in this particular agreement was controlling, and therefore I didn't need any more testimony about whether there was anything that should help me in effect interpreting the common law contract would be that which might happen at the beginning of the contract. In other words, things like duress or fraud or misrepresentation in some other way, that in that context the parole evidence rule would allow me to take further testimony as to the contract itself and not interpret the contract as it's written. It seems to me you're suggesting don't take that evidence. That's exactly what I'm suggesting. Because that's an exception to the parole evidence rule where you would take the evidence. No, it is not. And it's because we're not talking about applying the parole evidence rule in this case. The parole evidence rule has to do with determining what is the scope of the agreement of the parties. And the parole evidence cases often deal with situations where there is an integration clause. And Mr. Christie relies on cases involving integration clauses. An integration clause, of course, says this is the full agreement of the parties. There are no other agreements. The Washington law under the parole evidence rule is that an integration clause is not necessarily determinative. If the parties come in and prove, as a matter of fact, that it was merely boilerplate and was factually inaccurate, that the party's mutual intent was, in fact, to agree to terms broader than the contract. Now, if a party is able to prove that and overcome the integration clause, the contract becomes an unintegrated contract, the result of which is that a party may bring in evidence of agreements outside of the written agreement, but only if those other agreements are not inconsistent with the written agreement that was executed. Well, that's one part, certainly, of the parole evidence rule. One cannot bring in additional agreements if they're inconsistent with that which is in the agreement itself. But there is one other part of the parole evidence rule, which is that the negotiation process prior to the agreement being put together, if there's fraud or duress or those kind of circumstances that arise, one might have to talk about or allow evidence about what happened in the negotiation. The way I would phrase that, Your Honor, is that the evidence related to the negotiation process under the parole evidence rule comes in in two ways. One way it comes in is to elucidate the meaning of the written terms that were agreed to, and we're obviously not dealing with that aspect of it. The aspect I think Your Honor is getting to is if there is evidence of fraud in the inducement of a contract, the parole evidence rule and an integration clause does not bar admission of that evidence. Correct. Now, we are not dealing with the parole evidence rule here. We would be dealing with the parole evidence rule and an integration clause if Mr. Kent was attempting to come in and say, well, in addition to what I agreed to in writing, there are also other agreements that we had that are part of the overall agreement, and I want to enforce those as well. That is not what Mr. Kent is attempting to do. Mr. Kent wants to undo this agreement by saying that it was induced by fraud based on statements that he claims that he reasonably or justifiably relied upon. Now, an integration clause is not a defense to that claim. A no-reliance clause is a defense to that claim. And it's just a question of how much of a defense it is. I agree with that, Your Honor. Yes. So getting back then to Judge Reimer's point, which is what about the multi-factor test and how powerful is the evidence of the no-reliance clause when confronting the claim of fraudulent inducement? If we go to the Stewart case, we see that it talks about needing to look at a variety of factors. However, in the Stewart case, the court upheld summary judgment based on the existence of the no-reliance clause and based on the other factors in the case, which were primarily that the purchaser of the securities was a sophisticated party. There is no Washington case that tells us what facts are sufficient to make out a fraudulent inducement claim, even if there is a no-reliance clause. There are some suggestions in the cases that if the parties are not represented by counsel or unsophisticated, that that may be sufficient to make it an issue of fact. Certainly, if the plaintiff proved that he executed the agreement under duress or that there was some other fundamental defense to the contract itself, that would be a defense. But aside from that, every Washington case that has dealt with a no-reliance clause as a defense to a fraudulent inducement claim has granted summary judgment on the basis of a no-reliance clause. The Kwiatkowski case is one of those cases. In that case, the plaintiff said, well, the parties, the banks here, who were my fiduciaries, made false representations to me implicit by the fact that they did not provide a full disclosure in the court file of how they handled this. I relied on that, and I should be able to use that as a basis for fraudulent inducement of my settlement agreement. And the court said that, no, you agreed that you did not rely on anything outside the settlement agreement, and that bars you from claiming reliance. In the Stewart case, as I mentioned, even though it's a securities case and was looking at a lot of factors that I would contend do not apply in a common law fraud case, the court found that it was not enough to avoid summary judgment for the plaintiff to simply say, well, there were oral representations that were made to me that were false that I relied upon. Because that's not enough to create an issue of fact as to whether the alleged reliance was reasonable when a sophisticated party has executed an agreement in which he says, I am not relying on anything outside the four corners of this agreement. In the FMC case, Judge Kuhnauer, affirmed in a memorandum decision by this court, came to the same conclusion. Sophisticated parties represented by counsel, the no reliance clause is definitive in that context. Judge Peckman in the Cagliari case came to the same conclusion. Sophisticated parties, no reliance clause, summary judgment granted. Really the question here is, what evidence has the plaintiff put forward that would be enough to convince a reasonable jury that he was reasonable in relying on matters outside of the agreement, despite the fact that he had signed an agreement in which he said, I'm not relying on anything. And the plaintiff has not put forward any evidence that would make that reliance reasonable. The only evidence that the plaintiff puts forward to support the reasonableness of his reliance is he says, well, there were statements made to me and I relied on them. But at the time he signed the release agreement, at that point in time, the objective manifestations of the contracting parties of Mr. Kent was he was affirming that he was not relying on anything outside the four corners of the agreement. He was a sophisticated party, acted as a treasurer or CFO in six different companies over the course of 13 years. He was represented by legal counsel. He specifically negotiated the agreement. His legal counsel obtained revisions to the agreement. This was not boilerplate. This was not a contract of adhesion. He, under all those circumstances, knowingly agreed he was not going to rely on anything outside the four corners of the agreement. He now wants to come in and say, I guess that wasn't true when I said that, and that's going to be the basis for my fraud claim. The Washington case law does not support that position. We ask that the panel affirm the district court. Thank you. Thank you. Thank you for your argument. There's evidence in this record of a gross mischaracterization or gross miscarriage of justice. And that is, Mr. Kent was induced by evidence sufficient to survive or create an issue of fact of fraud in terms of the status of the likelihood of in situ selling its stock to Boeing. He gave up stock options, which two months later would have translated into hundreds of thousands of dollars. That is evidence in this record. And so I invite this court to adopt the Stewart eight-factor test and tend to look at the evidence in this record, which consists of the declaration of Mr. Kent, the responding declaration of Mr. Sleeman, as well as the statements conceded in the Rule 26 report that we filed with the court. And if you look at that and we want to talk about reasonable reliance, I submit to you that this court will find a genuine issue of fact that warrants sending this case back for trial. But as you know, Judge Siebel, the issue is how much of a defense is the no reliance provision. And that is exactly the issue that's framed in this case. And we do have a handful of Washington cases that are diametrically opposed in terms of whether it is a complete defense. We have one case on that. And we have two cases that say it is not a complete defense. Now, granted, we have to deal with the cases as they come. And Stewart is a subscription agreement case. The case that followed it that did not have a no reliance provision, but that was referenced as authoritative by Judge Shea, is the Hellenius decision. That was not a subscription agreement. That was a stock purchase agreement case. But quite simply, those cases have adopted a fundamental make sense test, and that is the eight-factor test that says, certainly a no reliance provision is strong evidence, but it is not definitive. And we keep talking about the repeated reference to a sophisticated party represented by counsel. Let's grant those as true. What we're talking about here is evidence hidden from counsel, evidence hidden from Mr. Kent about the status of negotiations between In-Situ and Boeing to sell this company. Because what we know on this record is that Mr. And within a matter of two to three months, a deal was closed whereby Boeing acquired In-Situ, making these options valuable. That would not have occurred otherwise. Thank you, Your Honors. Do we have a couple minutes left? No. You're not on appeal, Harry. You're just responding. Case 09-35737 is now submitted.
judges: Cebull, Rymer, Smith N. R.